## TATUM STATE BANK v. WOOLWORTH et al.
### No. 1713—6252.

Commission of Appeals of Texas, Section A.

Nov. 28, 1933.

King, Wood & Morrow and Everett L. Looney, all of Houston, and Brachfield & Wolfe, of Henderson, for plaintiff in error.

Smith & West, of Henderson, for defendants in error.

HARVEY, Presiding Judge.

This is a suit on a contract, brought by the Tatum State Bank, a state bank organized and operating under the laws of this state, against G. W. Briggs, R. O. Kuykendall, J. Pruitt, Mrs. R. G. Gladney, J. F. Coupland, and other signers of said contract. The trial court gave judgment for the bank, and the defendants named prosecuted an appeal, and the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for said appellants. The bank was granted the writ of error by the Supreme Court.

The contract sued on reads as follows:

"This instrument witnesseth an agreement entered into between the undersigned, owners of the capital stock of the First State Bank of Tatum in the Town of Tatum, Texas, in the number of shares set opposite our names, respectively, to-wit:

| Name | No. Shares | Name | No. Shares |
| --- | --- | --- | --- |
| J. F. Copeland | 10 | J. G. Woolworth | 5 |
| J. T. Wooten | 10 | J. F. Copeland | |
| J. Pruitt | 10 | J. Pruitt | 25 |
| Oliver Daniel | 5 | R. O. Kuykendall | |
| G. W. Briggs | 15 | R. O. Kuykendall | 5 |
| M. L. Hemby | 5 | Mrs. R. T. Gladney | 5 |

being all of the stockholders of said bank, parties of the first part and P. R. Nisbett for himself personally and his associates and a new bank to be organized in the Town of Tatum by the said P. R. Nesbitt and associates, parties of the second part, as follows, to-wit:

"The said P. R. Nisbett for himself and associates agree and obligate themselves to organize a new state bank to do business in the Town of Tatum, Texas, the same to have a paid up capital of Seventeen Thousand Five Hundred Dollars ($17,500.00) and a paid in surplus of Seventeen Hundred Fifty Dollars ($1,750.00), said bank to be promptly organized and application made for charter:

"That when said charter has been obtained and the new bank is ready to open for business, the same shall take over and assume all of the deposits of the First State Bank of Tatum as reflected and shown by its individual ledger but not further or otherwise; that said new bank will further take over and assume all other liabilities of said First State Bank of Tatum as reflected by its books and shown by a statement made therefrom, but not further or otherwise;

"That upon the obtaining of the said charter by the parties of the second part with Certificate from the Commissioner of Banking to open for business, the parties of the first part agree to forthwith hold a stockholders' meeting, having previously executed all necessary waivers incident thereto and at said meeting to pass all necessary motions and resolutions authorizing the taking over by the said new bank the above liabilities and further and especially authorizing the sale and transfer to said new bank its cash, sight exchange, bills receivable, banking house furni-

ture to the full discharge and liquidation to the amount of the obligation thus assumed by the new bank and to vote in the affirmative for such resolution either in person or by proxy.

"It is agreed between the parties that the banking house furniture and fixtures shall be taken over by the new bank for Five Thousand Three Hundred Fifty Two & 74/100 Dollars ($5,352.74); that same together with the cash and a sight exchange shall be first credited upon the amount of the obligation so owing to the new bank; that for the balance of said obligation, the First State Bank of Tatum shall transfer and assign, under its endorsement and guaranty, such of its bills receivable and in sufficient amount to fully liquidate the balance of said obligation so owing to the new bank; and that as additional security and guaranty to the new bank and in support of the guaranteed endorsement of the First State Bank of Tatum made upon the bills receivable of said bank so transferred to the new bank, the remaining assets of the First State Bank of Tatum shall be endorsed and assigned to the new bank to be held by it as collateral security and the proceeds to be derived from collections thereon to be used by the new bank to reimburse itself for any and all notes so endorsed and sold to it as may ultimately prove to be insolvent and uncollectible within a period of six months after the maturity of any such obligations in the discretion of said new bank; and as further and additional security upon the notes so sold and transferred to said new bank, we, the undersigned, stockholders, do hereby acknowledge ourselves, jointly and severally liable to said new bank in the principal sum of Ten Thousand Dollars ($10,000.00) and do jointly and severally agree that in the event any of the notes so sold and transferred to the new bank shall be uncollectible to the full amount of their face and that said new bank shall suffer a loss by virtue of said notes or any of them that we, jointly and severally, will reimburse said new bank for such loss not to exceed said aggregate amount of $10,000.00.

"The liability of the stockholders hereunder shall be matured and enforceable twelve months from the date hereof; and we hereby jointly and severally agree that we will, upon demand of said new bank, at any time on and after the expiration of twelve months from this date take up and remove from the assets of said bank any and all notes which were sold and transferred to it by the First State Bank of Tatum that have not previously been paid, and failing to do so, the new bank may enforce collection against us jointly and severally for the amount of said notes so unpaid together with accrued interest and ten per cent. attorney's fees, but the Tatum State Bank may extend time of settlement twelve months and this instrument shall be, and remain in force and effect.

"[Signed by all parties.]"

■ At the time the above contract was made, the First State Bank of Tatum, a bank organized and operating under the laws of the state, was in a state of insolvency. In pursuance of the terms of the contract, the Tatum State Bank was duly organized, whereupon it took over the assets and assumed the liabilities of the other bank in accordance with the contract. This suit is for indemnity as provided in said contract. The defendants in error defend on the ground that, by virtue of the provisions of article 531 of the statutes, the said contract is illegal. This question of illegality of the contract is the only question before us.

Article 531 reads as follows: "It shall be unlawful for any banking corporation organized under this title to make a voluntary general assignment."

In our opinion, the Legislature did not intend, by enacting this statute, to render illegal a contract such as the one in controversy here. The statute has no reference to a transfer by one state bank, of its assets, to another state bank which assumes the debts of the former—both being under the supervision of the state banking commissioner, and subject to the authority with which the law invests that official. In the present instance, the new bank being under the jurisdiction of the state banking commissioner, the depositors and other creditors of the old bank have the same protection as they did before, along with the new security which the assumption of the liabilities of the old bank by the new bank involves.

■ The paramount purpose of all our statutes regulating state banks is the protection and security of depositors and other creditors of such banks. All these statutes should be construed in keeping with this paramount purpose, unless the contrary clearly appears. Shropshire v. Shaw (Tex. Com. App.) 49 S.W. (2d) 708. So construing this statute, it is reasonable to say that same was not intended by the Legislature to apply to transactions of this character. In addition to reasons already stated, this conclusion finds a great measure of support in the provisions of article 513. This statute provides in part as follows: "Any State bank or bank and trust company which purchases the assets of any other bank shall, before the purchase of the assets of such other bank, increase its capital to such an amount that the same will have the ratio to the total deposits of the bank, the assets of which it has purchased, as defined and required in Article 506. * * *" These provisions manifestly contemplate, as a lawful subject of contract, the purchase from one

'state bank, of the assets of such bank, by another state bank, where the purchase involves the assumption of the liabilities of the seller bank.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.